742 F.2d 729
 6 Soc.Sec.Rep.Ser. 275, Unempl.Ins.Rep. CCH 15,500
CITY OF NEW YORK, New York City Health and Hospitals Corp.,
State of New York, Cesar Perales, Commissioner, N.Y.S. Dept.
of Social Services, William F. Morris, Acting Commissioner,
N.Y.S. Office of Mental Health, Jane Does I and II, Richard
Does I, II, III & IV, Plaintiffs-Appellees,
v.
Margaret M. HECKLER, Secretary of Health and Human Services,
John A. Svahn, Commissioner of U.S. Social
Security Administration, Defendants-Appellants.
 No. 1095, Docket 84-6037.
 United States Court of Appeals,
Second Circuit.
 Argued March 23, 1984.
Decided Aug. 27, 1984.
 
 Howard S. Scher, Atty., Appellate Staff, Civ.Div., Dept. of Justice, Washington, D.C. (Richard K. Willard, Acting Asst. Atty. Gen., William Kanter, Atty., Appellate Staff, Civ.Div., Dept. of Justice, Washington, D.C., Raymond J. Dearie, U.S. Atty., Brooklyn, N.Y., on the brief), for defendants-appellants.
 Thomas W. Bergdall, New York City (Frederick A.O. Schwarz, Jr., Corp. Counsel, Lois M. May, New York City, Robert Abrams, Atty. Gen., Paul M. Glickman, Howard L. Zwickel, New York City, Ambrose Doskow, Richard L. Claman, Jan G. Zager, Rosenman Colin Freund Lewis & Cohen, New York City, Leonard Rubenstein, Mental Health Law Project, Washington, D.C., Jane Stevens, Brooklyn Legal Services, Brooklyn, N.Y., on the brief), for plaintiffs-appellees.
 Before LUMBARD, NEWMAN and PRATT, Circuit Judges.
 JON O. NEWMAN, Circuit Judge:
 
 
 1
 The Secretary of Health and Human Services appeals from a judgment of the District Court for the Eastern District of New York (Jack B. Weinstein, Chief Judge) invalidating a procedure used by the Social Security Administration ("SSA") in the determination of original and continuing eligibility of claimants for disability benefits. City of New York v. Heckler, 578 F.Supp. 1109 (E.D.N.Y.1984). The ruling affects a class of persons with severe mental illnesses. The class is estimated to include more than 50,000 New York residents. The Secretary raises no challenge on appeal to the District Court's invalidation of the challenged procedure, which has since been abandoned. However, the appeal presents substantial and complicated issues concerning the jurisdiction of the District Court to adjudicate the class members' challenge and to award relief. For reasons that follow, we affirm the judgment of the District Court.
 
 Background
 
 2
 The invalidated procedure concerns one aspect of the elaborate process by which people are determined to be eligible for disability benefits under the Social Security Disability Insurance ("DI") program, established by Title II of the Social Security Act ("the Act"), 49 Stat. 622, as amended, 42 U.S.C. Sec. 401 et seq. (1982), and the Supplemental Security Income ("SSI") program established by Title XVI of the Act, 76 Stat. 197, as amended, 42 U.S.C. Sec. 1381 et seq. (1982). More specifically, we are concerned with the five-step "sequential evaluation" process adopted by the Secretary to govern determination of initial and continuing eligibility for disability benefits under both DI and SSI programs.
 
 
 3
 The first step in the sequential process is a decision whether the claimant is engaged in "substantial gainful activity." If so, benefits are denied. 20 C.F.R. Secs. 404.1520(a), (b), 416.920(a), (b) (1983). If not, the second step is a decision whether the claimant's medical condition or impairment is "severe." If not, benefits are denied. 20 C.F.R. Secs. 404.1520(c), 416.920(c). If the impairment is "severe," the third step is a decision whether the claimant's impairments meet or equal the "Listing of Impairments" set forth in subpart P, app. 1, of the social security regulations, 20 C.F.R. Secs. 404.1520(d), 416.920(d). These are impairments acknowledged by the Secretary to be of sufficient severity to preclude gainful employment. If a claimant's condition meets or equals the "listed" impairments, he or she is conclusively presumed to be disabled and entitled to benefits. If the claimant's impairments do not satisfy the "Listing of Impairments," the fourth step is assessment of the individual's "residual functional capacity," i.e., his capacity to engage in basic work activities, and a decision whether the claimant's residual functional capacity permits him to engage in his prior work. If the residual functional capacity is consistent with prior employment, benefits are denied. 20 C.F.R. Secs. 404.1520(e), 416.920(e). If not, the fifth and final step is a decision whether a claimant, in light of his residual functional capacity, age, education, and work experience, has the capacity to perform "alternative occupations available in the national economy." Decker v. Harris, 647 F.2d 291, 298 (2d Cir.1981); 20 C.F.R. Secs. 404.1520(f), 416.920(f). If not, benefits are awarded.
 
 
 4
 The procedural irregularity challenged in this litigation concerns the fourth step of the sequential evaluation process--the determination of residual functional capacity. In disregard of the regulatory requirement to conduct an individualized assessment of the residual functional capacity of each claimant, SSA, informally and without public disclosure, adopted an administrative practice that effectively imposed a presumption upon the determination of eligibility for DI benefits: Claimants whose mental impairments were not as severe as those in the Listing of Impairments were presumed to retain a residual functional capacity sufficient to perform at least unskilled work.[1] This presumption was conclusive as to most claimants with mental impairments that were "severe" but not "listed." The practical effect of the presumption was to end the sequential process for most class members at the third step. The only class members who might progress through the fourth and fifth steps and receive benefits were those over 50 with extreme vocational deficiencies and "severe" but unlisted mental impairments. These class members, despite the presumption concerning residual functional capacity, might be found eligible for benefits by virtue of the medical-vocational "grid" regulation, 20 C.F.R. subpart P, app. 2 (1983), but the force of the presumption could still adversely affect their claims.[2]
 
 
 5
 The presumption concerning residual functional capacity was applied throughout the elaborate administrative process by which claims for initial and continuing disability benefits are determined. The presumption guided determinations made by the New York State Office of Disability Determinations, pursuant to its contract with the SSA and review decisions made at the regional and national levels by SSA officials. Upon the de novo reviews conducted by administrative law judges, the presumption was not required to be applied, but the District Court found that ALJ's often relied on determinations of residual functional capacity that were tainted by use of the presumption earlier in the review process.
 
 
 6
 On February 8, 1983, the City of New York and the New York City Health and Hospitals Corporation, the Commissioner of the New York State Department of Social Services, and the Acting Commissioner of the New York State Office of Mental Health, suing on their own behalf and as parens patriae, and eight named individuals brought this class action against the Secretary and the Commissioner of SSA on behalf of
 
 
 7
 All individuals residing in the State of New York who have applied for or received Title II and/or Title XVI benefits on or after April 1, 1980, and who have been found by defendants to have a mental impairment which is severe ... and whose applications for benefits have been or will be denied or whose benefits have been or will be terminated, on the basis of defendants' determination that such persons are capable of substantial gainful activity.
 
 
 8
 Plaintiffs sought declaratory and injunctive relief enjoining the Secretary from continuing to apply the unwritten presumption concerning residual functional capacity. The complaint invoked jurisdiction under the Social Security Act, 42 U.S.C. Sec. 405(g) (1982), and the mandamus statute, 28 U.S.C. Sec. 1361 (1982).[3]
 
 
 9
 The Secretary unsuccessfully resisted class certification on the ground that the District Court lacked jurisdiction over most members of the proposed class. Following class certification, the Secretary filed her answer, denying plaintiffs' allegations and renewing her jurisdictional arguments. The answer did not specifically assert that the claims of some class members were time-barred by the 60-day rule of section 405(g), which permits judicial review only of decisions of the Secretary made within 60 days of the filing of a complaint in a district court. Though the answer was not amended to assert a time bar, the Secretary referred to this argument at the outset of trial and in her post-trial brief.
 
 
 10
 The District Court rejected the Secretary's jurisdictional contentions. On the merits Chief Judge Weinstein ruled that "from 1978 until at least the early months of 1983" SSA engaged in a covert policy to deny class members an individualized assessment of each claimant's capacity to engage in substantial gainful activity in violation of the strictures of the Social Security Act and regulations enacted thereunder. 578 F.Supp. at 1115. As relief the Court ordered the Secretary (i) to reopen all disability determinations rendered after April 1, 1980, in which disability benefits were denied or terminated, and (ii) to "reinstate benefits of all class members until the claimant's eligibility is properly determined." Id. at 1125. These reinstated benefits have been referred to in the litigation as "interim" benefits. The Court stayed its judgment for ten days to permit an application for a stay pending appeal to this Court. Id.
 
 
 11
 Following the Secretary's motion for a stay pending appeal or, in the alternative, for clarification of the rationale for denying a stay, Chief Judge Weinstein entered an amended judgment modifying the judgment to limit relief to individuals with a "functional psychotic or functional non-psychotic mental impairment which is severe ..." and to limit interim benefits to recipients whose benefits had been terminated. The Court also entered a two-part stay pending appeal: First, the amended judgment was fully stayed for a ten-day period to permit application to the Court of Appeals for a stay pending appeal; second, a partial stay pending appeal was granted relieving the Secretary of the obligation to reopen and readjudicate the claims of individuals whose applications for benefits had been denied and who had abandoned their claims prior to December 10, 1982 (the 60th day prior to the filing of this action). Reopening was still required for all class members whose benefits had been terminated. The Secretary was also required to identify all class members, those whose applications for benefits had been denied and those whose benefits had been terminated, and to provide interim benefits to all class members whose benefits had been terminated. This Court denied the Secretary's motion to stay the District Court's amended judgment.
 
 
 12
 On appeal, the Secretary does not challenge the District Court's ruling on the merits, but raises only jurisdictional contentions. She asserts that the District Court lacked jurisdiction under section 405(g) over most members of the certified class: (i) claimants whose right to pursue administrative or judicial review lapsed prior to December 10, 1982, (ii) claimants whose benefits were terminated and who did not challenge the Secretary's action, and (iii) claimants who failed to exhaust administrative remedies. The Secretary further contends that mandamus jurisdiction is not available and that the District Court lacked authority to award interim benefits in the absence of an administrative finding of disability.
 
 Discussion
 A. Section 405(g) Jurisdiction
 Section 405(g) provides:
 
 13
 Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow ... in the district court of the United States for the judicial district in which the plaintiff resides ....
 
 
 14
 The Secretary contends that many, if not most, class members fail to satisfy section 405(g)'s prerequisites of a final decision made after a hearing and commencement of a civil action within sixty days subsequent to the mailing of notice of such decision (or such further time as the Secretary may allow).
 
 
 15
 The requirement of a "final decision of the Secretary made after a hearing" has been held to consist of two elements--(i) the "jurisdictional," non-waivable requirement that a claim for benefits has been presented to the Secretary and (ii) the "waivable" requirement that the administrative remedies prescribed by the Secretary have been exhausted. Mathews v. Eldridge, 424 U.S. 319, 328-30, 96 S.Ct. 893, 899-900, 47 L.Ed.2d 18 (1976); Weinberger v. Salfi, 422 U.S. 749, 764-65, 95 S.Ct. 2457, 2466, 45 L.Ed.2d 522 (1975).
 
 
 16
 Presentment Requirement. The District Court ruled that the non-waivable, "presentment" requirement had been satisfied by all class members--those whose applications for benefits had been denied by the Secretary and those whose benefits had been terminated pursuant to continuing eligibility review. The class members whose applications for benefits were denied clearly satisfy the presentment requirement. See Mathews v. Eldridge, supra, 424 U.S. at 329, 96 S.Ct. at 900; see also Mathews v. Diaz, 426 U.S. 67, 72, 76, 96 S.Ct. 1883, 1887, 1889, 48 L.Ed.2d 478 (1976) (jurisdiction sustained for claimants who filed application after suit filed); Jones v. Califano, 576 F.2d 12, 18 (2d Cir.1978) ("It is undisputed that [plaintiffs], by filing claims with the SSA, have satisfied the non-waivable requirement."). Whether recipients whose benefits were terminated also surmount this jurisdictional barrier is more problematic.
 
 
 17
 We reject at the outset the view endorsed by other Circuits that mere termination of benefits somehow satisfies the presentment requirement. See Lopez v. Heckler, 725 F.2d 1489, 1503 (9th Cir.1984) ("class members ... have had their benefits terminated ... and have thus met the presentation requirement"); Kuehner v. Schweiker, 717 F.2d 813, 817 (3d Cir.1983) (plaintiffs meet "the first, non-waivable condition, because all the claimants were benefit recipients whose benefits had been reduced or terminated"); Ellison v. Califano, 546 F.2d 1162, 1164 (5th Cir.1977). We recognize that the rationale underlying these decisions is not implausible--that the recipient's failure to report that disability ceased amounts to a "continuing claim" for benefits.
 
 
 18
 We continue to adhere, however, to the position adopted in Wheeler v. Heckler, 719 F.2d 595, 600 (2d Cir.1983), that a recipient subject to continuing eligibility review does not satisfy the presentment requirement through inaction. Wheeler held that terminated recipients who failed to "initiate[ ] even informal communications with SSA ... either prior or subsequent to receipt of a termination notice," id. at 600 (footnote omitted), had not satisfied the non-waivable jurisdictional requirement of section 405(g). Various Supreme Court pronouncements lend support to this view. In Eldridge, a benefit-termination case, the Court found the presentment requirement satisfied by the recipient's actions that "specifically presented the claim that his benefits should not be terminated because he was still disabled." 424 U.S. at 329, 96 S.Ct. at 900. See also Califano v. Yamasaki, 442 U.S. 682, 703-04 & n. 15, 99 S.Ct. 2545, 2558-59 & n. 15 (1979) (recipients must seek formal reconsideration in order to satisfy section 405(g)'s presentment requirement). Our view also draws support from some of the opinions written by the Justices in connection with the stay of the Ninth Circuit's decision in Lopez v. Heckler, supra. In granting the stay, Justice Rehnquist, acting as Circuit Justice, explicitly stated that the Secretary's termination decision does not by itself satisfy the presentment requirement. Heckler v. Lopez, 463 U.S. 1328, 104 S.Ct. 10, 14, 77 L.Ed.2d 1431 (1983). When the Court denied a motion to vacate the stay, Justice Stevens stated, in his partial concurrence, that the presentment requirement was satisfied by the submission of a questionnaire indicating that the recipient was still disabled and desired benefits, Heckler v. Lopez, 463 U.S. ----, 104 S.Ct. 221, 223, 78 L.Ed.2d 217 (1983) (Stevens, J., with whom Blackmun, J., joins, concurring in part and dissenting in part).
 
 
 19
 In this case, however, terminated recipients did not remain passive. Prior to the Secretary's decision to terminate benefits, every class member completed a Social Security questionnaire indicating in writing that he remained disabled and desired benefits. We agree with Chief Judge Weinstein that the submission of the disability questionnaire satisfied the presentment requirement.
 
 
 20
 The Secretary points out that the class members here apparently did not communicate with SSA after the submission of the questionnaire or the receipt of an initial termination notice. She seeks to distinguish Eldridge on the ground that the claimant there not only submitted a completed questionnaire but also sent a letter objecting to SSA's preliminary notice of termination of benefits. Her argument draws support from Justice Rehnquist's view that recipients must "question[ ] the initial determination that they cease to be disabled," Heckler v. Lopez, supra, 104 S.Ct. at 14. We agree that where the Secretary acts unilaterally to terminate or reduce benefits, for example, where benefits are terminated because a recipient returned to work or failed to cooperate with the agency's review process, a claimant must act in order to trigger section 405(g) jurisdiction. However, we resist the view that jurisdiction is lacking where a claimant asserts eligibility after commencement of the continuing eligibility review process even though prior to the Secretary's initial determination. We find more persuasive Justice Stevens' less formalistic, more pragmatic understanding of Eldridge that all a claimant need do is "specifically present[ ] the claim that his benefits should not be terminated because he was still disabled," Heckler v. Lopez, supra, 104 S.Ct. at 229 n. 2 (quoting Mathews v. Eldridge, supra, 424 U.S. at 329, 96 S.Ct. at 900). That thought was adequately expressed by Eldridge in either his letter or his returned questionnaire, and here by the plaintiffs' return of their questionnaires.
 
 
 21
 Exhaustion Requirement. The second jurisdictional prerequisite, that the administrative remedies prescribed by the Secretary be fully exhausted, may be waived, either by the Secretary, Weinberger v. Salfi, supra, 422 U.S. at 766-67, 95 S.Ct. at 2467, or, in appropriate circumstances, by the courts, Mathews v. Diaz, supra, 426 U.S. at 76-77, 96 S.Ct. at 1889-90; Mathews v. Eldridge, supra, 424 U.S. at 330-32, 96 S.Ct. at 900-01; Mercer v. Birchman, 700 F.2d 828, 831 (2d Cir.1983). In this case the District Court, over the Secretary's objections, dispensed with the need fully to exhaust administrative remedies as a condition of judicial review. On appeal, the Secretary contends that judicial waiver is inappropriate in this case. We disagree.
 
 
 22
 The Supreme Court has adopted a practical approach to section 405(g)'s exhaustion requirement. The Court has approved judicial waiver where plaintiff's legal claims are collateral to the demand for benefits, where exhaustion would be futile, or where the harm suffered pending exhaustion would be irreparable. Compare Mathews v. Eldridge, supra (exhaustion waived), with Heckler v. Ringer, --- U.S. ----, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984) (exhaustion not waived).
 
 
 23
 Although Eldridge and Ringer make clear the circumstances that permit a court to waive exhaustion, they do not establish whether each of the individual factors deemed relevant in those decisions--futility, collaterality, and irreparable harm--must be present before a court may dispense with exhaustion. In the absence of express guidance, we have taken the view that no one factor is critical. See Smith v. Schweiker, 709 F.2d 777, 780 (2d Cir.1983). We have adopted a more general approach, balancing the competing considerations to arrive at a just result under the circumstances presented. That approach points toward waiver of exhaustion in this case.
 
 
 24
 As was true in Eldridge and not true in Ringer, claimants here have raised a colorable claim that recovery of retroactive benefits would not be fully compensatory because of their mental disabilities and their dependency on disability benefits. We have no reason to disturb Chief Judge Weinstein's conclusion that the harm caused by wrongful denials was "irreparable." From ample evidence the District Judge found that "[t]he ordeal of having to go through the administrative appeal process" would likely trigger a "severe medical setback" for many members of the class. 578 F.Supp. at 1118. Such consequences are hardly consistent with the remedial goals of the Act and the nation's mental health policy.
 
 
 25
 With respect to the nature of the plaintiffs' claims, it cannot be said, as was true in Eldridge, that these are "wholly" collateral to the claim for benefits; plaintiffs' contention that the Secretary unlawfully failed individually to assess claimants' residual functional capacity is somewhat intertwined with claimants' demand for benefits. However, the class here complains fundamentally of a procedural irregularity and not of the Secretary's substantive standards of eligibility. The District Court was not asked to and did not rule on the merits of any of the underlying claims. In this regard cases such as Heckler v. Lopez, supra; Heckler v. Ringer, supra; and Smith v. Schweiker, supra, which involved challenges to the Secretary's substantive standards, are distinguishable. We conclude, therefore, that although not "wholly" collateral, plaintiffs' claims are substantially collateral to their entitlement to disability benefits and consequently present an appropriate circumstance for waiver. See Mental Health Ass'n of Minnesota v. Heckler, 720 F.2d 965, 969-71 (8th Cir.1983); see also Lopez v. Heckler, supra, 725 F.2d at 1501-03; Kuehner v. Schweiker, supra, 717 F.2d at 818; id. at 821-23 (Becker, J., concurring).
 
 
 26
 Moreover, under the circumstances of this case, exhaustion of administrative remedies would have been futile. Although exhaustion might have resulted in recovery of retroactive benefits for some members of the class, as was also true in Eldridge, the administrative process cannot vindicate the procedural rights asserted in this litigation. The class members complain of a procedural irregularity--the failure of the Secretary to base eligibility determinations on individualized assessments of a claimant's residual functional capacity. This procedural right, guaranteed by the Secretary's regulations, cannot be vindicated by an ultimate determination of eligibility. For that reason further exhaustion justifiably may be waived.
 
 
 27
 More generally, we discern no legitimate interest to be advanced by requiring plaintiffs to travel through the administrative maze as a prerequisite of a judicial hearing. This is not a case like Smith v. Schweiker, supra, or Heckler v. Ringer, supra, where the claim asserted could benefit from further factual development or from the agency's "experience and expertise," Weinberger v. Salfi, supra, 422 U.S. at 765, 95 S.Ct. at 2467. Nor is this a case where exhaustion serves to "prevent[ ] premature interference with agency processes" or to allow the agency "an opportunity to correct its own errors." Id. As in Eldridge it is not realistic to "expect that the Secretary would consider substantial changes in the current administrative review system at the behest of a single aid recipient ... in an adjudicatory context," 424 U.S. at 330, 96 S.Ct. at 900.
 
 
 28
 Sixty-Day Limitation. Under the Act, claimants must seek judicial review of final decisions of the Secretary "within sixty days after the mailing ... of notice of such decision or within such further time as the Secretary may allow." 42 U.S.C. Sec. 405(g) (1982). The Secretary argues that the District Court lacked jurisdiction over those claimants who were entitled to but did not seek judicial review of an adverse decision of the Secretary received more than 60 days prior to commencement of the present suit, i.e., claimants who abandoned their claims prior to December 10, 1982.[4] She contends that the 60-day provision is jurisdictional and not a statute of limitations provision, as the District Court ruled. She further contends that the 60-day provision was not waived and, as a jurisdictional requirement, could not be waived.
 
 
 29
 We acknowledge that the Supreme Court's position on whether the 60-day provision is jurisdictional is not free from doubt. In the stay ruling in Heckler v. Lopez, supra, 104 S.Ct. at 222-23, Justice Stevens reckoned with the issue and concluded that the 60-day requirement is jurisdictional. Although the Secretary apparently had failed to raise the 60-day requirement in the District Court, Justice Stevens declined to find waiver and concurred in maintaining the stay of the Ninth Circuit's judgment insofar as the stay applied to claimants who had not sought administrative or judicial review of their termination decisions 60 days prior to the filing of the complaint.
 
 
 30
 On various other occasions, however, the Court has instructed that the 60-day limitation is not jurisdictional. Both Salfi and Eldridge construed the 60-day requirement as a statute of limitations, waivable by the parties. See Mathews v. Eldridge, supra, 424 U.S. at 328 n. 9, 96 S.Ct. at 899 n. 9; Weinberger v. Salfi, supra, 422 U.S. at 763-64, 95 S.Ct. at 2465-66. And notwithstanding his opinion in Lopez, Justice Stevens' separate opinion in Heckler v. Ringer, supra, 104 S.Ct. at 2028, 2033-36, incorporates the Salfi and Eldridge statements to the effect that section 405(g) contains a "statute of limitations" waivable by the parties. Justices Brennan and Marshall also view the 60-day requirement as waivable, Heckler v. Lopez, supra, 104 S.Ct. at 225, 226.
 
 
 31
 Along with other Courts of Appeals this Circuit has adopted the view that the 60-day limitation period is not jurisdictional. Latona v. Schweiker, 707 F.2d 79, 81 (2d Cir.1983); see Lopez v. Heckler, supra, 725 F.2d at 1508; Mental Health Ass'n of Minnesota v. Heckler, supra, 720 F.2d at 973 n. 19; but see Lopez v. Heckler, supra, 725 F.2d at 1510-11 (Boochever, J., concurring); Whipp v. Weinberger, 505 F.2d 800, 801 (6th Cir.1974). In the absence of an authoritative ruling by the Supreme Court to the contrary, we continue to believe that the 60-day requirement is not jurisdictional.
 
 
 32
 That conclusion leads to the further inquiry whether the failure of some class members to satisfy the 60-day requirement is nonetheless fatal to their claims. Without assessing the correctness of Chief Judge Weinstein's view that the Secretary failed timely to assert the 60-day provision as a defense, we agree with the plaintiffs' contention that the 60-day requirement, even if timely raised, does not bar the claims of any class members because the 60-day period was effectively tolled during the time that SSA's policy of applying the challenged presumption concerning residual functional capacity remained operative but undisclosed.
 
 
 33
 All of the class members who permitted their administrative or judicial remedies to expire were entitled to believe that their Government's determination of ineligibility was the considered judgment of an agency faithfully executing the laws of the United States. Though they knew of the denial or loss of benefits, they did not and could not know that those adverse decisions had been made on the basis of a systematic procedural irregularity that rendered them subject to court challenge. Where the Government's secretive conduct prevents plaintiffs from knowing of a violation of rights, statutes of limitations have been tolled until such time as plaintiffs had a reasonable opportunity to learn the facts concerning the cause of action. See Lopez v. Heckler, supra, 725 F.2d at 1505-07 (disability claim); Barrett v. United States, 689 F.2d 324, 327-30 (2d Cir.1982) (claim under Federal Tort Claims Act), cert. denied, --- U.S. ----, 103 S.Ct. 3111, 77 L.Ed.2d 1366 (1983); Chiappa v. Califano, 480 F.Supp. 856 (S.D.N.Y.1979) (disability claim). Since in this case the full extent of the Government's clandestine policy was uncovered only in the course of this litigation,[5] all class members may pursue this action notwithstanding the 60-day requirement.[6]B. Mandamus Jurisdiction
 
 
 34
 Section 1361 of the Judicial Code provides:
 
 
 35
 The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.
 
 
 36
 The Secretary resists mandamus jurisdiction with two arguments: (1) that the third sentence of section 405(h) of Title 42 bars mandamus jurisdiction and (2) that even if mandamus were available, the District Court erred in concluding that the writ could properly be issued. Neither argument succeeds.
 
 
 37
 Although the Supreme Court has on numerous occasions declined to decide whether the third sentence of section 405(h) bars mandamus jurisdiction over claims arising under the Act, Heckler v. Ringer, supra, 104 S.Ct. at 2022; Califano v. Yamasaki, supra, 442 U.S. at 698, 99 S.Ct. at 2556; Norton v. Mathews, 427 U.S. 524, 529-31, 96 S.Ct. 2771, 2774-75, 49 L.Ed.2d 672 (1976); Mathews v. Eldridge, supra, 424 U.S. at 332 n. 12, 96 S.Ct. at 901 n. 12, it is settled in this and other circuits that, notwithstanding the sweeping language of section 405(h), mandamus jurisdiction is available under circumstances where the writ properly would issue. See, e.g., Dietsch v. Schweiker, 700 F.2d 865, 867-68 (2d Cir.1983); Mercer v. Birchman, supra, 700 F.2d at 832; Ellis v. Blum, 643 F.2d 68, 78-82 (2d Cir.1981); Barnett v. Califano, 580 F.2d 28, 31 (2d Cir.1978); White v. Mathews, 559 F.2d 852, 856 (2d Cir.1977), cert. denied, 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978); see also Lopez v. Heckler, supra, 725 F.2d at 1507-08; Mental Health Ass'n of Minnesota v. Heckler, supra, 720 F.2d at 968-69; Kuehner v. Schweiker, supra, 717 F.2d at 819; Leschniok v. Heckler, 713 F.2d 520, 522 (9th Cir.1983).
 
 
 38
 This is a case where the writ properly would issue. A writ of mandamus will not issue unless (1) the plaintiffs have a right to have the act performed, (2) the defendant is under a clear nondiscretionary duty to perform the act requested, and (3) plaintiff has exhausted all other avenues of relief. The first two conditions are obviously satisfied. The Act and the regulations enacted thereunder establish both the right and the duty--claimants' right to have eligibility determinations based on individualized assessments of residual functional capacity and the Secretary's duty to make such assessments and base eligibility determinations upon them.
 
 
 39
 In a sense it is somewhat anomalous to uphold the exercise of mandamus jurisdiction in a case such as this where the District Judge concluded, and we agree, that all class members have an adequate remedy under section 405(g) of the Act. Normally, the availability of jurisdiction for traditional appellate review would preclude mandamus jurisdiction. Nevertheless, we rely on mandamus jurisdiction as an alternate source of the District Court's authority, in the event that, upon further review, it is determined that section 405(g) jurisdiction is unavailable to some of the class members.[7]
 
 C. The Merits and the Remedy
 
 40
 The Secretary has made no claim before the District Court or on appeal that use of the presumption concerning residual functional capacity was lawful. There is thus no dispute that on the merits the class members are entitled to prevail. However, the Secretary challenges on appeal the scope of the District Court's remedial decree, specifically, the reinstatement of benefits for those class members previously determined to be disabled but subsequently terminated from the disability rolls. This reinstatement has the effect of awarding interim benefits to terminated class members until such time as the SSA makes a procedurally correct determination that they are no longer eligible for disability benefits. In the Secretary's view, this award of interim benefits violates the principle of sovereign immunity, which shields the Government from liability for a money judgment in the absence of an express congressional enactment waiving such immunity. We disagree.
 
 
 41
 The Act authorizes benefit payments following a final decision by the Secretary or a final judgment by a court that a claimant is "entitled" to benefits, 42 U.S.C. Sec. 405(i). The amended judgment provides interim benefits only to those individuals who have previously received a "final decision" from the Secretary that they were "entitled" to disability benefits. New applicants were not awarded interim benefits. Once the District Court properly invalidated the Secretary's termination decisions because of the acknowledged procedural illegality, the Court was clearly entitled to reinstate the earlier favorable final decisions pending lawful redeterminations of each claimant's continuing eligibility. As both the Eighth and Ninth Circuits have held in closely analogous circumstances, the payment of benefits to wrongfully terminated recipients follows a final decision of the Secretary and consequently is consistent with the requirements of section 405(i). Mental Health Ass'n of Minnesota v. Heckler, supra; Lopez v. Heckler, supra (preliminary injunction).
 
 
 42
 We do not construe the recent amendment to section 223 of the Act, Pub.L. No. 97-455, Sec. 2, 96 Stat. 2498 (1983), (codified at 42 U.S.C. Sec. 423(g), extended through December 7, 1983, Pub.L. No. 98-118, Sec. 2, 97 Stat. 803 (1983)), as indicating a congressional understanding that federal courts lacked remedial power to order the award of interim benefits in appropriate circumstances. That amendment entitles claimants who are challenging a termination decision to continue to receive benefits throughout their administrative appeals. We see no reason to think that Congress, in authorizing interim benefits during administrative appeals, believed that such benefits were not available during pursuit of judicial remedies. The more plausible interpretation is that Congress was anxious to fill a gap and ensure continuity of benefits on the understanding that, after administrative remedies were pursued, courts had adequate authority to continue interim benefits.
 
 
 43
 More fundamentally, we do not construe section 405(i) as a limitation on a federal court's remedial powers under the Act. While a court's injunctive power must be exercised with caution, respectful of the authority of coordinate branches of Government, cf. Heckler v. Day, --- U.S. ----, 104 S.Ct. 2249, 2258, 81 L.Ed.2d 88 (1984), where, as here, the award of interim benefits is necessary to make whole individuals harmed by the SSA's failure to abide by the law, federal courts are not without authority to award the necessary relief. See Mental Health Ass'n of Minnesota v. Heckler, supra; Day v. Schweiker, 685 F.2d 19, 23-24 (2d Cir.1982), rev'd on other grounds sub nom. Heckler v. Day, --- U.S. ----, 104 S.Ct. 2249, 81 L.Ed.2d 88 (1984); White v. Mathews, supra, 559 F.2d at 861 (Social Security Act does not "exclud[e] the possibility of interim payments ordered by a court exercising its remedial power"), cert. denied, 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978).
 
 
 44
 The judgment of the District Court is affirmed.
 
 
 
 [1]
 SSA's policy was communicated through a series of unpublished internal memoranda circulated within SSA from 1979 through 1982. It was enforced on the state disability determination agency through SSA's "Quality Assurance Review" of initial state determinations. At both the regional and national levels SSA analysts and physicians conduct sample reviews of state agency decisions. Whenever regional or national review detects an "error," the claim is remanded to the state agency for redetermination. According to the evidence presented to the District Court, for the period in question SSA quality assurance reviews, and consequently the state agency whose performance SSA scrutinized, were guided by the challenged presumption
 
 
 [2]
 The differing consequences of the presumption for the minority and majority of class members become evident from a comparison of the "grid" regulations concerning older and younger persons. Compare 20 C.F.R. subpart P, app. 2, Secs. 201.01, 201.09, 202.01, 202.09, 203.01, 203.10 (1983) (unskilled claimants aged 50 and over granted benefits), with 20 C.F.R. subpart P, app. 2, Secs. 201.18, 201.23-.24, 202.16-.17, 203.25 (1983) (unskilled claimants aged 49 and under denied benefits)
 
 
 [3]
 Federal question jurisdiction, 28 U.S.C. Sec. 1331 (1982), was also invoked for causes of action based on the rule-making provision of the Administrative Procedure Act, 5 U.S.C. Sec. 553 (1982), the Freedom of Information Act, 5 U.S.C. Sec. 552 (1982), and the Due Process Clause of the Constitution. In view of our disposition of the appeal, we do not reach the question of whether jurisdiction is available on these alternative bases. Furthermore, since the Secretary does not challenge the standing of the individual and class plaintiffs, we do not reach the issue whether the City and State of New York have standing to assert their own interests or, acting as parens patriae, to protect the interests of their citizens. Cf. Watt v. Energy Action Educational Foundation, 454 U.S. 151, 160, 102 S.Ct. 205, 212, 70 L.Ed.2d 309 (1981) (inconsequential standing issues reserved)
 
 
 [4]
 At every stage in the administrative review process claimants are normally required to appeal from adverse administrative decisions within 60 days, see 20 C.F.R. Secs. 404.900 et seq. and 416.1400 et seq. Consequently, the class members the Secretary considers time-barred are (1) claimants who did not seek administrative review within 60 days of the initial state agency determination of ineligibility, (2) claimants who sought an ALJ hearing but did not seek Appeals Council review within 60 days, and (3) claimants who appealed to the Appeals Council but failed to bring suit in federal district court within 60 days
 
 
 [5]
 Although an earlier case, Mental Health Ass'n of Minnesota v. Heckler, supra, involved the identical SSA presumption at issue here, in that litigation SSA erroneously represented that the presumption was not in use in other SSA regions
 
 
 [6]
 Even if we were inclined to agree with the Secretary that the 60-day provision is jurisdictional, it would still be arguable that the time period was tolled by the non-disclosure of the presumption challenged in this litigation
 
 
 [7]
 If the Supreme Court were to disagree with our rulings that class members are in compliance with the presentment and 60-day requirements of section 405(g), we believe mandamus jurisdiction would be available. However, we recognize that if section 405(g) jurisdiction should be held unavailable because of disagreement with our ruling that administrative remedies need not be exhausted, then mandamus jurisdiction would also be unavailable. See Heckler v. Ringer, supra, 104 S.Ct. at 2022-23; Ellis v. Blum, supra, 643 F.2d at 78