Robert SCHISLER, Mary Micelli, Paulette Beard, Frank Powroznik, Rose Reese, Harry Delandro, Marjorie Hilts, Cinda Coleman, Rose Mitchell and Kathran Tennant, On Behalf of Themselves and All Other Individuals Similarly Situated, Plaintiffs,

v.

Margaret M. HECKLER, as Secretary of the United States Department of Health and Human Services; Barbara Blum, as Commissioner of the New York State Department of Social Services, and Sidney Houben, as Director of Social Services Bureau of Disability Determinations, Defendants.

No. Civ–80–572E.

United States District Court,
W.D. New York.

Dec. 3, 1984.

Lewis A. Golinker, New York City, Olney Clowe, Buffalo, N.Y., Bryan D. Hetherington, Rochester, N.Y., for plaintiffs.

Renee Wohlenhaus, U.S. Dept. of Justice, Washington, D.C., for defendants.

MEMORANDUM and ORDER

ELFVIN, District Judge.

In this class action lawsuit plaintiffs have challenged numerous policies and practices of the Secretary of Health and Human Services ("the Secretary") which allegedly have been utilized since 1976 to improperly terminate their Social Security disability insurance and Supplemental Security Income ("SSI") disability benefits. Plaintiffs have now moved for summary judgment and the Secretary has cross-moved for a remand by this Court to her of the cases of all class members due to the enactment October 9, 1984 of the Social Security Disability Benefits Reform Act of 1984, Public Law 98–460 ("the Reform Act"), which assertedly has rendered this action moot.

The principal issues raised by the Complaint concern the Secretary's evidence development procedures employed during

"continuing disability investigations" ("CDIs") of persons who had previously been found entitled to disability or SSI disability benefits as well as the alleged failure of the Secretary to utilize a "medical improvement" standard in assessing these persons' entitlement *vel non* to continued benefits. In a Memorandum and Order filed August 12, 1981 this Court had certified this lawsuit as a class action under Fed.R.Civ.P. rule 23(b)(2), such class consisting of

> "all persons who have been or will be found eligible for Title II disability insurance benefits and SSI [Supplemental Security Income] disability benefits and with respect to whom review of continuing disability has been or will be made by the New York State Department of Social Services [Office] of Disability Determinations pursuant to its agreement with the Social Security Administration without substantial medical evidence to show that their medical condition has improved since their original determination of disability to the point where he or she is able to engage in substantial gainful activity." Memorandum and Order, page 11.

Thereafter on January 31, 1983 plaintiffs moved for certification of a subclass consisting of members of the original class

> "who have been or will be found eligible for Title II disability insurance benefits or SSI disability benefits due to a mental disability, in whole or in part, and with respect to whom review of continuing disability has been or will be made by the New York State Department of Social Services Office of Disability Determinations, pursuant to its agreement with the Social Security Administration, or who have been or will be reviewed initially by the Social Security Administration under more recent procedures."

Plaintiffs also sought broad preliminary injunctive relief as to such subclass. In a decision filed November 18, 1983[1] the subclass as set forth above was ordered certified and the Secretary was preliminarily

enjoined from terminating the benefits of any subclass member without compliance with certain procedures enumerated in such Memorandum and Order. The Secretary and her agents were further directed to comply strictly with specific CDI evidence development instructions and procedures contained in her Program Operations Manual System and to reopen the cessation decisions of all subclass members whose benefits had been terminated for their failure to respond to or cooperate with a CDI conducted by the Secretary. This latter aspect of the preliminary injunction was required in order to ensure that such inaction by a subclass member was in no manner attributable to such person's mental or physical impairments.

With respect to the motions presently before this Court, the parties have essentially agreed that the Reform Act has codified virtually all of the relief sought by plaintiffs' summary judgment motion and that a remand of class members' termination decisions to the Secretary, pursuant to a granting of plaintiffs' motion or under the provisions of the new legislation, is inevitable and should proceed expeditiously.

Sections 2(d)(3)(A) and 2(d)(3)(B) of the Reform Act require that in the case of any recipient of disability or SSI benefits

> "(A) who has been determined not to be entitled to such benefits on the basis of a finding that the physical or mental impairment on the basis of which such benefits were provided has ceased, does not exist, or is not disabling, and

> (B) who was a member of a class certified on or before September 19, 1984, in a class action relating to medical improvement pending on September 19, 1984, but was not identified by name as a member of the class on such date, the court shall remand such case to the Secretary. * * * "

Section 2(d)(2)(C) similarly makes the Act's provisions applicable and requires a remand to the Secretary of cases of members

---

1. *Schisler v. Heckler,* 574 F.Supp. 1538 (W.D. N.Y.1983).

of a pending class action who are identified by name in such lawsuit.

The Reform Act has also codified the "medical improvement" standard of review in termination of benefits proceedings (section 2(a)), has provided that an individual whose case has been remanded to the Secretary may elect to have his or her benefits reinstated pending the Secretary's review of such case (section 2(e)), has required the Secretary to consider and re-develop the medical evidence in individuals' case records and to promulgate detailed regulations regarding the utilization of consultative examiners (section 9) and has directed the retroactive payment of benefits to an individual found to be disabled subsequent to completion of the case review required by the statute (section 2(f)).

The Secretary has argued that in view of the provisions of the Reform Act this Court should clarify the instant class's membership by setting a starting date for inclusion therein of persons whose benefits had been terminated on or after May 11, 1980 (sixty days prior to the filing of the Complaint) and forthwith remand the cases of these persons to her and dismiss this lawsuit. Plaintiffs have asserted that, based upon the evidence they have submitted to this Court previously and in support of their instant motion, they are entitled to a judgment by this Court ordering a remand to the Secretary and requiring the immediate reinstatement of benefits of all class members. In addition plaintiffs have contended that the onset date for class membership should be set at June 1, 1976 and that any order of remand should require, *inter alia,* the Secretary to identify to them the names of all class members, to notify each plaintiff of such remand by mail and by publication in major New York newspapers and to develop and implement procedures for re-adjudication of remanded cases and resolution of disputes concerning individuals' membership in the certified class. Plaintiffs have also urged that this Court retain jurisdiction over this action as a means of guaranteeing the Secretary's compliance with the terms of any remand order and to permit the Secretary to seek a revision of such order in the future should a performance or other problem arise.

Addressing the threshold issue of the "front-end" or starting date for inclusion in the class certified August 12, 1981, I find that all persons whose disability and/or SSI disability benefits were terminated on or after June 1, 1976 and prior to October 9, 1984,[2] or who had an administrative appeal pending on June 1, 1976 are properly includable within the class's membership and are deserving of re-adjudication of their cessation decisions under the Reform Act. Plaintiffs have estimated, and the Secretary's Responses to Plaintiffs' First Interrogatories support the approximation, that 13,000 persons had had their benefits terminated between June 1, 1976 and May 11, 1980 as a result of CDIs performed by or on behalf of the Secretary. The sixty-day limitations period created by 42 U.S.C. § 405(g) does not preclude the inclusion in the class (or subclass) or a remand for re-adjudication of the cases of persons who have satisfied the presentment and exhaustion requirements for jurisdiction under such section.

Section 405(g) provides:

"Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow * * * in the district court of the United States for the judicial district in which the plaintiff resides * * *."

In *City of New York v. Heckler,* 742 F.2d 729 (2d Cir.1984), it was explained that

"[t]he requirement of a 'final decision of the Secretary made after a hearing' has been held to consist of two elements —(i) the 'jurisdictional,' non-waivable requirement that a claim for benefits has

**2.** Cessation decisions rendered by the Secretary on or after October 9, 1984 are governed by the provisions of the Reform Act. *See* Section 2(d)(2)(A).

been presented to the Secretary and (ii) the 'waivable' requirement that the administrative remedies prescribed by the Secretary have been exhausted." Id. at 734.

Although the Court in *City of New York* expressly held that the Secretary's termination of benefits of an individual, standing alone, would not satisfy the presentment and exhaustion requirement, it was further explained that the completion and submission to the Secretary of a CDI questionnaire by a benefits recipient prior to the termination decision had sufficiently satisfied such requirement. *Id.* at 735.

In the case at bar it can be said with a degree of certainty, based upon statistical data submitted by the Secretary, that approximately 99% of the estimated 13,000 claimants terminated between June 1, 1976 and May 11, 1980 had in fact returned the CDI informational questionnaire to the Secretary. The July 25, 1984 declaration of John P. Scully, Deputy Associate Commissioner for Disability, Office of Disability, Baltimore, Md., indicates that, based upon a review of a computer analysis of the 14,000 cessation of benefits decisions in New York between March 1, 1981 and November 28, 1983, the Secretary has estimated that no more than 600 persons had been terminated for their failure to cooperate. Therefore the remaining 13,400 persons, or 99.6% of those recipients who had had their benefits terminated during such period, had at least returned the questionnaire to the Secretary. "If they had not done so, their benefits would have been terminated for non-cooperation." *City of New York v. Heckler,* 578 F.Supp. 1109, 1117 (E.D.N.Y.), *aff'd,* 742 F.2d 729 (2d Cir.1984).

Although a similar computer identification and analysis of New York cessations between June 1, 1976 and May 11, 1980 apparently has not as yet been performed, the Secretary has provided no evidence or reason for this Court to believe that the presentment requirement of returning the disability questionnaire had not been satisfied to the same extent by these 13,000 persons. I find, for today's purpose, that it

had been. It is further noted that, with respect to the few persons who may not have returned such questionnaire, such inaction may have been a direct result of the very mental or physical impairment for which they had been receiving benefits. Mandamus jurisdiction under 28 U.S.C. § 1361 would exist as to these class members' claims that the Secretary had failed to comply with medical improvement and other regulations—*see Smith v. Schweiker,* 709 F.2d 777, 779 (2d Cir.1983)—and therefore a remand for re-adjudication of the question of their entitlement to continued benefits is appropriate even should their cases technically fall outside of the jurisdiction of section 405(g).

The circumstances justifying waiver of the exhaustion of administrative remedies requirement under section 405(g) were also discussed in *City of New York v. Heckler, supra,* 742 F.2d at 736–737, and have existed in the instant action as to all class members since June 1, 1976. The appropriateness of a waiver of exhaustion in this case had been fully explained in this Court's August 12, 1981 and November 18, 1983 decisions and such waiver is fully consistent with the statements in *City of New York, supra,* that, where "plaintiffs' claims are substantially collateral to their entitlement to disability benefits" or where exhaustion would have been futile due to the inability of administrative process to "vindicate the procedural rights" asserted by plaintiffs, "exhaustion justifiably may be waived." 742 F.2d at 737.

The Secretary, in arguing for the imposition of May 11, 1980 as the starting date for inclusion in the class, had additionally asserted that the sixty-day filing of suit requirement under section 405(g) is jurisdictional in nature. However, in *City of New York* the Court had expressly held that "[i]n the absence of an authoritative ruling by the [United States] Supreme Court to the contrary, we continue to believe that the 60-day requirement is not jurisdictional." *Id.* at 738. It was further noted by that Court that "[e]ven if we were inclined to agree with the Secretary that

the 60-day provision is jurisdictional, it would still be arguable that the time period was tolled by the non-disclosure of the presumption [of a retained functional capacity to perform at least unskilled work] challenged in this litigation." *Id.* at 738 fn. 6.

Plaintiffs have contended that persons who had had their benefits terminated on or after June 1, 1976 are entitled to class membership and re-adjudication upon remand due to the Secretary's secretive repudiation on that date of the medical improvement standard. They have submitted in support of such contention a letter dated July 19, 1976 from Robert Bynum, Associate Commissioner, Social Security Administration ("SSA"), to the Director of Indiana's Disability Determination Division which indicated that effective June 1, 1976 "the question to be resolved in determining whether disability continues or ceases is whether the individual is *currently* disabled. Medical improvement is no longer the determining factor in continuing disability cases." (Exhibit B to the September 5, 1984 affidavit of Marvin S. Lachman, Chief, Social Services Disability Analyst in the Office of Disability Determinations). It is further averred in the Lachman affidavit:

> "Prior to mid-1976, SSA's policy was that medical improvement was the determining factor in continuing disability cases. This SSA 'medical improvement' regulation required ODD [New York's Office of Disability Determinations] to find that SSD [disability] and SSI claimants continued to be disabled unless there was substantial evidence of improvement in a claimant's medical condition sufficient to permit him or her to engage in substantial gainful activity. SSA explained this rule further by stating that 'it would neither be politic nor humanitarian for us to take adverse action against the claimant ... in the absence of medical or vocational improvement....' SSA Program Circular No. 75–6 at 2 (April 28, 1975) * * *.
>
> "SSA nullified its medical improvement regulation effective June 1, 1976. On that date, SSA issued an unpublished

written instruction providing that a disability be found to have ceased when the evidence indicates a claimant is *currently* able to engage in substantial gainful activity. Social Security Disability Insurance State Manual [DISM] § 353.5B. *See also,* SSA Claims Manual § 353.5A; POMS §§ DI 2862.A.1 and 2864.A. * * *.

> "Pursuant to SSA instructions, ODD's written notices to SSD and SSI claimants terminated under the current disability procedure indicated only that SSA had found the claimant no longer disabled. Accordingly, between June, 1976 and July 1983 (when ODD imposed a moratorium on CDI terminations), CDI terminees never received any written notice indicating that a medical improvement determination had not been made in their case and that only the most recent medical evidence had been requested prior to terminating them from benefits. The failure of the notices to inform claimants of the disability termination procedures and case development procedures applied in their cases clearly resulted in these individuals having no notice that SSA had applied the new procedures and consequently mislead [sic] them into failing to appeal these issues." Paragraphs 10–12.

The September 5, 1984 affidavit of Harold Solop, Assistant Director for Operations of New York's ODD, further indicates that

> "[p]rior to June, 1976 SSA policy required that no claimant could be terminated from benefits unless there was evidence of substantial improvement in his or her medical condition. This 'medical improvement' procedure was published in the federal regulations and in many other written SSA policy statements with which ODD [New York's Office of Disability Determinations] must comply.
>
> "Effective June 1, 1976 SSA implemented unpublished rules, instructions and other policy statements which replaced the 'medical improvement' policy with a 'current disability' policy * * *. SSA did not change its federal regula-

tions to reflect its adoption of the current disability policy until August 20, 1980."

The Secretary has submitted no evidence to controvert plaintiffs' argument, yet has asserted that her policies regarding the medical improvement standard were never secretive or undisclosed and that the Disability Insurance State Manual ("DISM") had been provided to states to set forth guidelines for program administration. The Secretary also has contended that her regulations specifically refer to the DISM and explain that such manual is available for review and copying in every branch and district office.

Upon consideration of the evidence before me as well as the arguments submitted by counsel for both parties October 26th, I find that the Secretary's utilization of a current disability standard in termination decisions, commencing June 1, 1976 by means of an instruction set forth in the DISM, which instruction contradicted the SSA's April 28, 1975 interpretation of its regulations—*see* Lachman Affidavit, Exhibit A—was sufficiently secretive conduct to warrant a tolling of the sixty-day limitations period contained in section 405(g) for all class members whose benefits were terminated or who had an administrative appeal pending on or after June 1, 1976. *Cf. City of New York v. Heckler, supra,* 742 F.2d at 738. Alternatively, I reiterate that mandamus jurisdiction for all plaintiffs' claims and for the instant remand of all class members' cases since June 1, 1976 under the provisions of the Reform Act exists under 28 U.S.C. § 1361. *See* Memorandums and Orders, August 12, 1981 and November 18, 1983;[3] *see also City of New York v. Heckler, supra,* 742 F.2d at 739.

In view of the comprehensive nature of the Reform Act and Congress's inclusion therein of specific notice provisions—*see, e.g.,* section 2(d)(3)(B)—and a requirement that the Secretary prescribe regulations to implement the Act "not later than 180 days after the date of the enactment"—*see* section 2(g)—, I find it would be inappropriate and inconsistent with the Reform Act's clear objective of uniform treatment of the pending class action cases and the thousands of individual cases to be remanded pursuant thereto for this Court to impose time limitations for the Secretary to notify class members in this action of the remand of their cases, or otherwise to delineate time periods or specific instructions with respect to the procedures to be utilized by the Secretary in the re-assessment of individuals' entitlements to continued benefits. Plaintiffs are however entitled to receive from the Secretary a listing of the names and addresses of all members of the class within a reasonable period of time after the entry of this Memorandum and Order.

Inasmuch as all class members' cases shall be remanded to the Secretary under the Reform Act, the State of New York's pending motion to intervene in this action as well as plaintiffs' motion for summary judgment shall be denied as moot. Plaintiffs' pending motion to hold the Secretary in contempt with respect to this Court's November 18, 1983 decision shall be denied.

In accordance with the foregoing it is hereby ORDERED (a) that the class of plaintiffs certified August 12, 1981 is limited with respect to the onset date for membership therein to include persons whose Social Security disability and SSI disability benefits had been terminated or who had an administrative appeal of a termination decision pending on or after June 1, 1976 until October 8, 1984; (b) that the cases of all plaintiffs in this action, except for any cases that have been previously ordered remanded or have been returned to the Secretary by stipulation, are remanded to the Secretary pursuant to sections 2(d)(2) and 2(d)(3) of the Reform Act of 1984; (c) that the Secretary is directed to provide plaintiffs' counsel with a listing of the names and addresses of those plaintiffs whose benefits were terminated since March 1, 1981 within ninety (90) days of the entry of this Memorandum and Order and to provide a listing to plaintiffs' counsel of the names and addresses of all other

---

**3.** *Schisler v. Heckler, supra,* at 1544–1545.

plaintiffs within one hundred and eighty (180) days of such entry; (d) that the State of New York's motion to intervene is denied; (e) that plaintiffs' motions for summary judgment and to hold the Secretary in contempt are denied; and (f) that this action is dismissed without prejudice to plaintiffs' motion, if any, within sixty (60) days of such entry for attorney's fees.