**UNITED STATES of America, Plaintiff,**

v.

**STATE OF OREGON, et al, Defendants.**

**Civ. No. 86–961MA.**

United States District Court, D. Oregon.

July 31, 1987.

**1250**

Jack C. Collins, Asst. U.S. Atty., Portland, Or., Robinsue Frohboese, Jeremy Schwartz, Cynthia L. Katz, Special Litigation, U.S. Dept. of Justice, Washington, D.C., for plaintiff.

Dave Frohnmayer, Atty. Gen., William F. Gary, Deputy Atty. Gen., Pamela L. Abernethy, Atty. in Charge, Glenn Klein, Asst. Atty. Gen., Special Litigation Unit, John McCulloch, Jr., Asst. Atty. Gen., Dept. of Justice, Salem, Or., for defendant Oregon.

David Hatton, Portland, Or., Arlene Kanter, Washington, D.C., for plaintiff-intervenor.

## OPINION

MARSH, District Judge.

On July 28, 1986, the United States filed suit against the State of Oregon (State) under the Civil Rights of Institutionalized Persons Act (CRIPA) to enjoin the State from depriving persons confined at Fair-view Training Center (Fairview) of rights secured by the United States Constitution and the Education of the Handicapped Act.[1] On March 30, 1987, a Health Care Financing Administration (HCFA) survey team began an inspection of Fairview to determine Fairview's compliance with HCFA standards for intermediate care facilities. On April 10, 1987, the survey team advised Fairview that it would recommend that its federal Medicaid funding be terminated because conditions at the facility posed a serious and immediate threat to the health and safety of its residents. Fairview's funding was terminated on April 17, 1987. On April 27, 1987, the State appealed this decertification to an administrative law judge. That appeal is pending.

On July 13, 1987, the State filed a request with HCFA for recertification. The State requested that HCFA reinspect Fairview beginning on July 27, 1987. At the time of the argument of this motion, HCFA was in the process of this inspection. Along with the HCFA survey team was the expert witness retained by the USDOJ for its CRIPA action.

On June 23, 1987, the State filed an answer and counterclaim in the CRIPA action. In its counterclaim, the State alleges that the United States Department of Justice (USDOJ) is preventing HCFA from restoring Medicaid funding unless the State signs a consent decree in the CRIPA action. The State contends that this is an attempt to coerce the State into accepting staffing ratios and other standards of care developed by USDOJ attorneys.

On June 29, 1987, the State filed a motion for a preliminary injunction to enjoin the United States from "refusing to restore federal Medicaid funding to Fairview Training Center (Fairview) pursuant to the

---

1. That action was brought pursuant to 42 U.S.C. § 1997a, which provides:

 (a) Whenever the Attorney General has reasonable cause to believe that any State or political subdivision of a State, official, employee, or agent thereof, or other person acting on behalf of a State or political subdivision of a State is subjecting persons residing in or confined to an institution ... to egregious or flagrant conditions which deprive such persons of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States causing such persons to suffer grievous harm, and that such deprivation is pursuant to a pattern or practice of resistance to the full enjoyment of such rights, privileges, or immunities, the Attorney General, for or in the name of the United States, may institute a civil action....

Medicaid Act, unless the State signs a consent decree demanded by the USDOJ." The State contends that the USDOJ is influencing HCFA to withhold more than $70,000 per day in federal Medicaid funds, causing Oregon's programs for the care of mentally retarded and other developmentally disabled persons to suffer irreparable harm. The State stresses that it is not seeking an order requiring restoration of the Medicaid funds which were terminated on April 17, 1987, but rather an order that HFCA be "permitted" to restore the funding if HCFA determines, free of inappropriate interference by the USDOJ, that Fairview now complies with HCFA's standards. Thus, its counterclaim is collateral to its administrative claim for a complete restoration of funding.[2]

Jurisdiction over this matter is exercised pursuant to 28 U.S.C. § 1331. To obtain a preliminary injunction, the State must show either (1) a likelihood of success on the merits and the possibility of irreparable harm, or (2) the existence of serious questions going to the merits and the balance of hardship tipping in its favor. *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1381 (9th Cir.1987); *Oakland Tribune, Inc. v. Chronicle Publishing Co.*, 762 F.2d 1374, 1376 (9th Cir.1985); *Inglis v. Sons Baking v. ITT Continental Baking Co., Inc.*, 526 F.2d 86, 88 (9th Cir.1975). Although often discussed in the alternative, these tests represent the extremes on a single continuum. "The critical element is the relative hardship to the parties. If the balance of hardships tips decidedly toward the plaintiff, less likelihood of success on the merits is required." *Wilson v. Watt*, 703 F.2d 395, 399 (9th Cir.1983).

Generally, in cases dealing with injunctive relief, the harm to the moving party is both identifiable and imminent. The propriety of granting the relief, therefore, usually focuses on whether there is a likelihood of success on the merits. Here, however, the likelihood of success is a probability. The propriety of granting the relief, therefore, hinges on whether there is a possibility of irreparable harm.

The State sets forth three grounds in support of its argument that there is a strong likelihood that it will succeed on the merits of its counterclaim for declaratory and injunctive relief against the USDOJ. First, it contends that the HCFA regulations for intermediate care facilities for the mentally retarded (42 C.F.R. Subpart G) are the only relevant factors which HCFA can consider when determining whether to restore Fairview's funding. Therefore, any attempt by the USDOJ to force HCFA to consider a factor outside of its regulations, such as the signing of a consent decree, is unlawful. Second, the State argues that even if judicially defined constitutional minimum standards of care are relevant to HCFA's funding decision, the HCFA regulations exceed constitutional standards. Third, the State contends that even if the HCFA standards don't satisfy constitutional standards, the prerequisite of signing a consent decree is an unconstitutional standard being imposed by the USDOJ.

The United States responds by contending that the State's counterclaim is not ripe for adjudication because there is no objective evidence that HCFA officials are considering, or will actually consider, any factors beyond their own regulations. The United States also argues that any representations made by USDOJ attorneys concerning the requirement of a consent decree made in settlement negotiations of the CRIPA claim are inadmissible in trial under Fed.R.Evid. 408[3] and should thus not be considered when determining the propriety

---

2. Because the State's counterclaim is collateral to the administrative proceedings regarding the original decertification by HCFA, the United State's contention that the State must exhaust its administrative remedies lacks merit.

3. Fed.R.Evid. 408 provides in part:
Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible.

of a preliminary injunction. Finally, the United States argues that any previous representations made by USDOJ attorneys regarding the requirement of a consent decree cannot overcome the declarations in support of plaintiff's memorandum opposing the preliminary injunction which deny that the USDOJ ever conditioned the restoration of funds on a consent decree.

 It is undisputed that the USDOJ cannot exercise control over HCFA so as to prevent HCFA from restoring Fairview's Medicaid funding. In its Memorandum In Opposition To Motion Of Defendants For Preliminary Injunction, the United States concedes that this court "can take judicial notice that the Department of Justice exercises no supervisory authority over the Department of Health and Human Services or units within that separate agency." In its memorandum, the United States contends that the USDOJ is not exercising any such authority and that any contacts with HCFA have been pursuant to 42 U.S.C. § 1997h[4] or are merely contacts for the purposes of rendering legal advice. During oral argument, however, counsel for the United States, appropriately and within the bounds of advocacy and ethics, would not deny that there have been statements by the USDOJ to HFCA that funding should not be restored to Fairview until the State signs a consent decree in the CRIPA action. The State also furnished declarations of state officials which assert that an Assistant Attorney General for the Civil Rights Division of the U.S. Department of Justice, unequivocally stated that the State of Oregon would have to sign USDOJ's consent decree before HCFA would restore Fairview's Medicaid funding. Declaration of Dave Frohnmayer In Support Of Defendants' Motion For Preliminary Injunction at 2; Declaration of William F. Gary In Support Of Defendants' Motion For Preliminary Injunction at 3–4.

State officials also attest that during a May 19, 1987 meeting between state officials, the USDOJ and HCFA, a Deputy Assistant Attorney General for the Civil Rights Division of the U.S. Department of Justice warned HCFA administrators that if they restored funding to an institution which the USDOJ considered unconstitutional, the HCFA administrators could be held personally liable. He also reasserted the warning that Medicaid funds would not be restored until the State signed the consent decree. Declaration of Gary at 3; Affidavit of Dan E. Simmons In Support Of Defendants' Motion For Preliminary Injunction at 2; Affidavit of James D. Toews In Support Of Defendants' Motion For Preliminary Injunction at 7. None of these contentions have been denied in affidavits or declarations filed on behalf of the United States. The statements of counsel during oral argument amount to a concession that the statements were made.

The USDOJ attorney statements were not made in settlement negotiations of the CRIPA action but rather were made in the context of meetings and conversations concerning what improvements the State would have to make at Fairview in order to have the funding restored. The May 19, 1987 meeting was held in order to review a remedial action plan developed by Oregon mental retardation professionals, partly based on earlier HCFA recommendations. Consequently, Fed.R. of Evid. 408 does not render the statements made at that meeting inadmissible.

It is reasonable to conclude that the State would be successful in proving that the USDOJ is forcing HCFA to include the signing of a consent decree in USDOJ's CRIPA action in its requirements for recertification. Thus, HCFA is being required

4. 42 U.S.C. § 1997h provides:
 At the time of notification of the commencement of an investigation of an institution under [the Civil Rights of Institutionalized Persons Act of 1980], and if the relevant institution receives Federal financial assistance from the Department of Health and Human Services ... the Attorney General shall notify the appropriate Secretary of his action and the reasons for such action and shall consult with such officials. Following such consultation, the Attorney General may proceed with an action under this subchapter if he is satisfied that such action is consistent with the policies and goals of the executive branch.

to adopt what the USDOJ considers to be the constitutional standards for intermediate care facilities, as a prerequisite to recertification. The United States' contention that the communications are merely legal advice is unconvincing. The communications documented above constitute enough of an interference with the decision making of HCFA that I conclude a preliminary injunction is warranted which would prevent the USDOJ from placing any requirement upon HCFA that recertification of Fairview, if allowed, must be further conditioned upon determination of the United States' CRIPA claim by a consent decree.

The United States' contention that the State's counterclaim is not ripe for adjudication and that a preliminary injunction is therefore not warranted is rejected. For the purposes of a preliminary injunction, relief is appropriate if the moving party can show a likelihood of success on the merits and the possibility of irreparable harm. I find that not only is it reasonably likely that the State will succeed on the merits of its counterclaim but it is highly probable. While the affidavit of William L. Roper, M.D., Administrator of HCFA, denies that the USDOJ is influencing HCFA's decision making, there is such strong indication of an intent to unduly influence HCFA that this court need not wait, for the purposes of a preliminary injunction, for the harm to be absolutely established. This is especially true in light of the fact that the State is being required to use state general funds to replace the lost Medicaid funds. The funds being depleted could have been directed to other community programs for Oregon's mentally retarded and developmentally disabled persons. Thus, the alleged harm to the State is not one of purely monetary loss. While there is a chance that the state general funds could be restored, it is by no means a certainty. In the interim, patients are not receiving community services intended for them.

Thus, balancing what I find to be a high probability of success on the merits with the apparent likelihood of irreparable harm, coupled with the fact that there is no likely harm to the USDOJ, I conclude that a preliminary injunction is warranted. Accordingly, the State's motion for a preliminary injunction is granted to the extent that the USDOJ is enjoined from requiring HCFA to adopt what the USDOJ considers the constitutional standards of an intermediate care facility, and from requiring HCFA to include the signing of a consent decree in USDOJ's CRIPA action in its requirements for recertification.

■ Having concluded that the defendant State of Oregon is entitled to a preliminary injunction, it is incumbent upon me to determine under Fed.R.Civ. 65(c) whether security should be required of the State. By the terms of the rule, no security would be required of the United States or of an officer of an agency thereof. The court is impressed with the fact that this addition to the rule is stated because of the assumed responsibility of the federal government. I would also feel that such consideration is due to the State of Oregon, but I do not find any such exception for the states in the rule itself. However, it has been held that a court may dispense with security if granting of the injunction carries no risk of monetary loss or damage to the party enjoined. *International Controls Corp. v. Vesco,* 490 F.2d 1334, 1356 (2d Cir.) *cert. den.* 417 U.S.' 932, 94 S.Ct. 2644, 41 L.Ed.2d 236 (1974); 11 Wright and Miller, Federal Practice and Procedure § 2954 (Supp.1986). It is clear from the circumstances of this case that there can be no likelihood of financial harm to the USDOJ. The requirement of the injunction is not to refrain in an activity that may involve some change in value or additional cost but rather to refrain acting in a way which the court feels inappropriate.

Therefore, I do not consider that a security is necessary.